1

2                                                                    JS-6

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10   YOLANDA RIOS,                          CASE NO.
                                            SA CV 19-04100-DOC-(SKx)
11                Plaintiff,

12        vs.                               **FINDINGS OF FACT,
                                            CONCLUSIONS OF LAW, TRIAL**
13                                          **ORDER and JUDGMENT**

14

15   UNUM LIFE INSURANCE COMPANY
     ET AL,
16

17                Defendant.

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

The parties filed Trial Briefs and Responses in this matter on July 13, 2020 and August 10, 2020, respectively.

This is a review, under the Employee Retirement Income Security Act ("ERISA"), of Defendant Unum Life Insurance Company's ("Defendant") denial of Plaintiff Yolanda Rios' ("Plaintiff") claim for disability benefits. The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the conclusions of law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the findings of fact section, they shall be deemed conclusions of law.

| **FINDINGS OF FACT** | | **SOURCE (AR)** |
| --- | --- | --- |
| 1.) The parties have stipulated, and the Court has accepted their stipulation, to de novo review. | \| | 1.) DKT 31,32 |
| 2.) The plan in this matter, Arnold & Porter Kaye Scholer, L.L.P. Welfare Benefit Plan and Individual Disability Income Policy, insured by Unum (collectively | \| | 2.) Policy Ex. 2, 000061, Ex. 3, 002920 |

"Policy"), is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"). |

---

3.)  The Policy provides benefits to eligible qualifying participants, which includes Plaintiff, in the event they become "disabled" within the meaning of the Policy. |  3.)  Id.

---

4.)  Under the Policy, a claimant is disabled when limited from performing the material and substantial duties of your Regular or Usual Occupation. |  4.)  Id.

---

5.)  After 24 months, a claimant is disabled when unable to perform the duties of "any occupation" or "any gainful occupation." |  5.)  Id.

---

6.)  Regular or Usual Occupation means your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer at a specific location. |  6.) Policy Def. Reg./Usual Occ. Ex. 4, 000083, 002920

| | |
|---|---|
| 7.)   Plaintiff's job at a large law firm, Arnold & Porter, as a User Support Specialist, required legal typing and constant sitting. | 7.)  Job Description<br>Ex. 5<br>000121 to 000122 |
| 8.)  Plaintiff's job was sedentary, and in addition to constant sitting, required Concentration ("ability to focus on a task for some length of time"), and Logical Thinking ("ability to use reasoning consistently ..."). | 8.)  Id. |
| 9.)  Plaintiff's Regular or Usual Occupation in the national economy was described by Unum's vocational consultant, Ms. Mary Cloutier, as sedentary and "constantly sitting," meaning "5.5+ hours in an 8 hour day." | 9.)  Cloutier's<br>Voc. Report 9.21.18<br>Ex. 6<br>002257 to 002259 |
| 10.)  Plaintiff's Regular or Usual Occupation in the national economy was sedentary and required "focus and concentration." | 10.)  Id. |

| | |
|---|---|
| 11.) Yolanda's first MRI of the lumbar spine, on November 14, 2015, when she was still working, showed foraminal narrowing, a 3-4 mm disc protrusion at L3/4, and a 4-5 mm protrusion at L4/5. | 11.) MRI Lumbar Spine Ex. 16 11.14.15 002759 |
| 12.) A second MRI performed on March 19, 2018, when Yolanda was no longer able to work, showed "disc protrusion at L3-4 contacting the right L3 nerve root, disc bulge at L2-3, disc/osteophyte complex at L4-5, foraminal stenosis at L3-4 and L4-5, and an annular fissure at L4-5. (New findings from 2015 to 2018 are underlined.) | 12.) MRI Lumbar Spine Ex. 10 3.19.18 003891 |
| 13.) Lumbar x-rays, on March 12, 2018, showed "severe" disc narrowing at L4/5. | 13.) X-ray Report 3.12.18 Ex. 15, 001239 |
| 14.) Plaintiff's primary disabling condition, as supported by her x-ray, MRI, and clinical findings, is back and leg pain (sciatica) related to multi-level | 14.) See: ¶¶ 12, 13, supra |

degenerative lumbar disc disease, stenosis, |

radiculopathy, and "severe disc narrowing at L4/5." |

_____

| 15.) On July 13, 2018, Unum initially approved and paid | 15.) Unum's |
| long-term disability benefits under the IDI Policy, and on | Approval Letters |
| July 16, 2018, under the LTD Policy.  Unum advised | Ex. 11 |
| Rios that approval was based on diagnoses of anxiety | 7.13.18, 002089; |
| and depression rather than physical impairment. Unum | 7.16.18, 002107; |
| agreed to further evaluate Rios' physical complaints. | AR 2108 |

| 16.) On September 26, 2018, Unum terminated the | 16.)   Unum's Term. |
| benefits it had been paying under both the IDI and LTD | Letter  9.26.18 |
| Policies after determining that Rios was not entitled to | Ex. 19 |
| further benefits under the Policies. | 002267–002274 |

| 17.) Unum terminated benefits, in part, on the | 17.) Cloutier's |
| basis of a vocational report from its in-house vocational | Voc. Report |
| specialist, Ms. Mary Cloutier, who, on September 21, | 9.21.18 |

| | |
|---|---|
| 2018, described Plaintiff's Regular or Usual Occupation | Ex. 6; 002258 |
| in the national economy as "sedentary." | |

---

| | |
|---|---|
| 18.) Unum further indicated at the time of its | 19.) Term. Let. |
| termination of benefits, on September 26, 2018, that | 9.26.18 |
| Plaintiff's sedentary occupation in the national economy | Ex. 19 |
| allowed her "the opportunity to stand and stretch and ... | 002270 |
| to briefly walk around the office ... (and) ... change | |
| positions intermittently as needed," so as to ease her | |
| pain and enable her to work. | |

---

| | |
|---|---|
| 19.) Dr. Malhis was a treating doctor (orthopedist) on | 20.) Malhis' Rec. |
| September 26, 2018, at the time of Unum's termination | Ex. 12 |
| of benefits, and on March 12, 2018, he documented that | 003894 |
| sitting, walking, and standing-up aggravated Plaintiff's | |
| pain, while rest improved it. | |

---

| | |
|---|---|
| 20.) Dr. Hafezi was a treating doctor (pain specialist) | 21.) Hafezi's Rec. |
| on September 26, 2018, at the time of Unum's | Ex. 13 |
| termination of benefits, and on September 19, 2018, he | 003855, |

| | |
|---|---|
| documented that sitting, standing, and walking aggrava-ted Plaintiff's back and leg pain, and rest relieved it. | 003862 |
| 21.) Physical Therapy, on April 3, 2018, documented that sitting and standing aggravated her pain, while lying down and resting eased it. | 22.) PT Rec. Ex. 14 003909-003910 |
| 22.) Mr. Edward Estrada was Plaintiff's Physician-Assistant (PA) on September 26, 2018, at the time of Unum's termination of benefits, and on July 30, 2018, he documented "severe left knee pain and swelling" and that Plaintiff "is having a hard time walking, is mainly limping x4 days ... weight-bearing and walking make pain worse and rest helps it." | 23.) Estrada's Rec. Ex. 18 003866 |
| 23.) Unum also based its termination of benefits on a Physician-Assistant Mr. Estrada's determination that "patient shouldn't sit or stand for prolonged (>1 hr) periods of times." (sic) | 24.) Estrada Rec. Ex. 18 003710 |

| | |
|---|---|
| 24.) Mr. Estrada did not indicate the total length of time Plaintiff could sit or stand in an 8-hour workday, but he did indicate that Rios "should not be required to stay in a fixed position (sitting or standing) for more than an hour at a time before being allowed to change position." | 25.) Id. AR 2251 |
| 25.)  On September 26, 2018, Unum terminated Plaintiff's benefits under both the IDI and LTD Policies. | 26.)  Ex. 19 002267-002268 |
| 26.) On February 25, 2019, Plaintiff appealed Unum's claim termination decision on the basis that it was contrary to the facts in the first instance and incorrectly taken. | 27.) Pl.'s Appeal Let. 2.25.19 Ex. 23 003720 |
| 27.) On April 11, 2019, Unum denied Plaintiff's appeal. | 28.) Unum Appeal Denial Letter 4.11.19 Ex. 22 |

| | 002669 |

| | |
|---|---|
| 28.) Unum's appeal denial decision was based in large part on a medical report from its in-house medical reviewer, Dr. Scott Norris. Unum also considered the opinions of its Medical Consultants: Alex Ursprung, Ph.D, Stuart Shipko, M.D., Joseph Antaki, M.D., and Peter Brown, M.D. | 29.)   Norris' Report 3.25.19  Ex. 20 002632 to 002633 |
| 29.) Dr. Norris is a "family and occupational medicine" doctor and not an orthopedic surgeon or pain specialist. | 30.)  Id. |
| 30.) Dr. Norris did not examine Plaintiff but performed a paper review on March 25, 2019 and concluded that "the mild to moderate findings noted on examinations and diagnostic testing/imaging do not support ongoing impairment that would preclude work." | 31.)  Id. 002633 |
| 31.) Unum's in-house nurse reviewer, Ms. Malan- | 32.) Nursing Report |

| | |
|---|---|
| Elzawahry, performed a paper review on March 12, | 3.12.19 |
| 2019 and concluded that "the insured's reported level | Ex. 21 |
| of pain is above that expected with the radiographic | 002605 |
| changes described." | |

| | |
|---|---|
| 32.) In making their pain assessments favoring | 33.) See: |
| non-disability, neither Dr. Norris nor Nurse | ¶¶ 32 and 33, |
| Malan-Elzawahry examined or treated Plaintiff | supra |
| or talked to her by telephone. | |

| | |
|---|---|
| 33.) Dr. Steiger, Plaintiff's treating orthopedist, never | 34.) Steiger's Rec. |
| indicated that Plaintiff complained of "excess pain" or | Ex. 7 |
| that her MRI/X-ray findings and examination findings | 003746 |
| did not support her pain complaints, and he specifically | |
| documented that Plaintiff was not a "malingerer." | |

| | |
|---|---|
| 34.) Dr. Malhis was Plaintiff's treating orthopedist | 35.) Malhis' Rec. |
| before Dr. Steiger, and he documented that Yolanda | Ex. 12 |
| "cannot sit or stand for long periods of time due to | 003885 |
| significant pain ..." and never indicated that Plaintiff | |

complained of "excess pain" or that her MRI/X-ray |

findings and examination findings did not support her |

pain complaints. |

_____

| 35.)    Dr. Hafezi, Plaintiff's treating pain specialist, | 36.)  Hafezi's Rec. |
| documented that sitting, standing and walking aggravated| Ex. 13, |
| Yolanda's back and leg pain, and he never indicated that | 003855 |
| Plaintiff complained of "excess pain" or that her | |
| MRI/X-ray findings and examination findings did not | |
| support her pain complaints. | |

_____

| 36.) Dr. Darling, Plaintiff's treating psychologist, | 37.) Darling Rec. |
| documented Yolanda's back pain and never indicated | Ex. 17 |
| that Plaintiff complained of "excess pain" or that her | 003784 |
| MRI/X-ray findings and examination findings did not | |
| support her pain complaints. | |

| 37.) Dr. Han, Plaintiff's treating primary care doctor, | 38.) Han's Rec. |
| documented Yolanda's back pain, sciatica, and | Ex. 8 |
| radiculopathy, and never indicated that Plaintiff | 003792-003793 |
| complained of "excess pain" or that her MRI/X-ray | |

findings and examination findings did not support her |

pain complaints.                                      |

_____

38.) Dr. Aguilera, Plaintiff's treating gynecologist,    | 39.)    Aguilera's Rec.

documented that Yolanda's back pain disabled her         |        Ex. 9

from sitting at a computer most of the day and never     |        003801

indicated that Plaintiff complained of "excess pain" or  |

that her MRI/X-ray findings and examination findings      |

did not support her pain complaints.                     |

_____

39.) Plaintiff's treating Physical Therapists documented |     40.) PT Rec.

that Yolanda was unable to sit or stand for "prolonged   |     Ex. 14

periods" and never indicated that Plaintiff complained   |     003909

of "excess pain" or that her MRI/X-ray findings and      |

examination findings did not support her pain complaints.|

_____

40.) Physician-Assistant Mr. Edward Estrada,             |    41.) Estrada's Rec.

Plaintiff's treating primary care provider, documented   |    Ex. 18

a 60-minute interval sitting limitation and never indicated|    003710

that Plaintiff complained of "excess pain," or that her  |

MRI/X-ray findings and examination findings did not |

support her pain complaints. |

_____

41.) No treating or examining doctor or health provider | 42.) See:

indicated that Plaintiff complained of "excess pain," or | ¶¶ 35 to 42,

that her MRI/X-ray findings and examination findings | incl.

did not support her pain complaints. | supra

_____

42.) Dr. Norris' report, favoring non-disability, was | 43.) Norris' Report

based on his determination that "neurological deficits | 3.25.19

were not observed," when on October 30, 2018 Dr. | Ex. 20,

Steiger documented "neurological deficits" that included | 002633;

loss of sensation and hypesthesia of the lateral right leg | Steiger's Rec.

rand foot, the absence of patellar and Achilles deep | Ex. 7

tendon reflexes (DTRs) in the lower extremities, positive | 003736-003737

lying and sitting straight-leg raise (SLR) tests and a |

positive Lasegue's test, indicative of lumbar nerve |

impingement. |

_____

43.) On November 29, 2018, Dr. Han similarly | 44.) Han's Rec.

| | |
|---|---|
| documented a positive SLR test consistent with nerve impingement. | Ex. 8 003792-003793 |
| 44.) Dr. Norris' report, favoring non-disability, was based on his finding that "diagnostic testing/imaging did not identify structural disease" when on March 19, 2018, an MRI of the lumbar spine showed disc protrusion at L3-4 contacting the right L3 nerve root, disc bulge at L2-3, disc/osteophyte complex at L4-5, foraminal stenosis at L3-4 and L4-5, and an annular fissure at L4-5. | 45.) Norris' Report 3.25.19, Ex. 20, 002632-002633; MRI Report 3.19.18 Ex. 10, 003891 |
| 45.) Dr. Norris' report was based on his finding that "lumbar MRI (March 2018) ... without evidence of significant nerve root impingement ...", when on March 19, 2018,  Plaintiff's MRI of the lumbar spine showed stenosis and "disc protrusion at L3-4 *contacting the right L3 nerve root ...*" [Emphasis added.] | 46.) Id. |
| 46.) Dr. Norris' report, was based on his finding that | 47.) Norris' Report |

Plaintiff's medical records "... did not describe... sedation |     3.25.19

... or other functional deficits related to medication side |     Ex. 20, 002633;

effects ...", when several treating doctors, including Dr. |     Steiger's Rec.

Steiger, documented that Plaintiff "takes a narcotic |     Ex. 7

medication which can be mind-altering and affect |     003741-003742

concentration ..." |

_____

47.)  Dr. Norris' report was based on his finding that |     48.) Norris' Report

Plaintiff's medical records "... did not describe ... |     3.25.19

sedation ... or other functional deficits related to |     Ex. 20, 002633;

medication side effects ...", when several treating doctors,|     Aguilera's Rec.

including Dr. Aguilera documented that Plaintiff had |     Ex. 9, 003801

difficulty concentrating and had memory problems. |

_____

48.)  Dr. Norris' report was based on his finding that |     49.) Norris' Report

Plaintiff's medical records "... did not describe... sedation|     3.25.19

 ... or other functional deficits related to medication side |     Ex. 20, 002633;

effects ...", when several treating doctors, including Dr. |     Darling's Rec.

Darling documented impaired recall, attention and |     Ex. 17, 003778

concentration difficulties. |

| | |
|---|---|
| 49.) Dr. Norris' report was based on his finding that Plaintiff's medical records "... did not describe .. sedation ... or other functional deficits related to medication side effects ...", when several treating doctors, including Physician-Assistant Mr. Estrada, documented "memory change," problems with focusing on tasks, and problems with memory, confusion, and concentration. | 50.) Norris' Report 3.25.19 Ex. 20, 002633; Estrada's Rec. Ex. 18, 003876, 003878 |
| 50.) Dr. Norris' report was based on his finding that Plaintiff's medical records "... did not describe... sedation ... or other functional deficits related to medication side effects ...", when several treating doctors, including Dr. Malhis documented that Plaintiff had memory and confusion problems and that her "muscle relaxant (Flexeril) does not allow her to work." | 51.) Norris' Report 3.25.19 Ex. 20, 002633; Malhis' Rec. Ex. 12, 003879 |
| 51.) At least five treating doctors and health care providers documented sedation and other functional deficits related to Plaintiff's medications. | 52.) See: ¶¶ 48 to 52, incl., supra |

| | |
|---|---|
| 52.) Dr. Norris' report was based on his finding that Plaintiff's "... level of treatment was not consistent with the severe level of impairment as reported by Ms. Rios," when, because of the severity of her pain, Dr. Malhis discussed invasive treatment options that included spinal injections and back surgery, which Plaintiff declined "because of the risks involved." | 53.) Norris' Report 3.25.19 Ex. 20, 002633; Malhis' Records Ex. 12, 003881, 003887; Decl. Rios 1.31.19 Ex. 1, ¶9, 003730 |
| 53.) Dr. Norris' report was based on his finding that Plaintiff's "... level of treatment was not consistent with the severe level of impairment as reported by Ms. Rios," when, because of the severity of her pain, Dr. Steiger discussed invasive treatment options that included knee surgery, which Plaintiff declined "because of the risks involved." | 54.) Norris' Report Ex. 20, 002633; Steiger's Rec. Ex. 7 003743; Decl. Rios 1.31.19 Ex. 1, ¶ 9 003730 |
| 54.) Dr. Norris' report was based on his finding that | 55.) Norris' Report |

| | |
|---|---|
| "... level of treatment was not consistent with the severe level of impairment as reported by Ms. Rios," when, because of the severity of her pain, Dr. Hafezi discussed invasive treatment options that included spinal injections and back surgery, which Plaintiff declined "because of the risks involved." | 3.25.19 Ex. 20, 002633; Hafezi's Rec. Ex. 13, 003862, 003869; Decl. Rios 1.31.19 Ex. 1 ¶ 9 003730 |
| 55.) Despite discussing spinal injections and surgery, Dr. Malhis also advised Plaintiff to try to "treat pain conservatively." | 56.) Malhis' Rec. Ex. 12, 003929 |
| 56.) Unum's nurse reviewer, Ms. Malan-Elzawahry, prepared a report favoring non-disability based on a paper review of Plaintiff's file that relied on her finding that Plaintiff's "sensory exams have remained normal as have her ... DTRs," when on October 30, 2018, Dr. Steiger documented sensory loss and hypesthesia of the lateral right leg and foot, a positive straight leg | 57) Nurse's Report 3.12.19, Ex. 21, 002601 - 002605; Steiger's Rec. Ex. 7 003736 - 003737 |

raise (SLR) test, a positive Lasegue's test, and an |

absence of deep tendon reflexes (DTRs) in the |

lower extremities. |

―――――――――――――――――――――――――――――――――――

57.) Nurse Malan-Elzawahry incorrectly indicated that | 58.) Ex. 21, 002605;

"repeated radiographs ... not[ed] age-related |     Ex. 10, 003891;

degenerative changes," when Plaintiff's MRI spinal |     Ex. 15, 001239

findings were multi-level and widespread; her x-ray |

findings at L4/5 were "severe," and no one described |

her x-ray or MRI findings as "age-related." |

―――――――――――――――――――――――――――――――――――

58.) Nurse Malan-Elzawahry incorrectly indicated that | 59.) Ex. 20, 002605;

Yolanda has "not required assistive devices for |     Ex. 7, 003744,

ambulation" and that "there is no reports of falls" (sic), |         003742

when Dr. Steiger documented that Plaintiff required |

using a knee brace and fell on several occasions. |

―――――――――――――――――――――――――――――――――――

59.) Plaintiff's job at Arnold & Porter required | 60.) Job Description

legal typing, Concentration ("ability to focus on a |     Ex. 5

task for some length of time"), and Logical Thinking |     00121-00122

("ability to use reasoning consistently ...").          |

---

| | |
|---|---|
| 60.)  Plaintiff's Occupation in the national economy, as described by Unum's own vocational consultant, Ms. Mary Cloutier, required "focus and concentration." | 61.) Cloutier's Voc. Report 9.21.18 Ex. 6, 002257-002259 |

---

| | |
|---|---|
| 61.)    At least five treating doctors and health care providers documented that Plaintiff was taking drugs "that affect concentration, and that Plaintiff had memory problems, impaired recall and attention, trouble focusing on tasks, confusion, and that her "muscle relaxant (Flexeril) does not allow her to work." | 62.)    See: ¶¶ 48 to 52, incl., supra |

---

| | |
|---|---|
| 62.) On February 25, 2019, in Plaintiff's pre-litigation appeal of Unum's termination of benefits, Plaintiff argued that she was "disabled from her job," from her "prior occupation"and/or "any occupation," and that her "functional capacity is less than sedentary." | 63.) Plaintiff's Appeal Letter 2.25.19 Ex. 23 003720 |

---

63.) On April 11, 2019, in its appeal denial letter, | 64.) Unum's

Unum addressed whether Plaintiff's functional | Appeal Denial Letter

capacity was "less than sedentary" and determined that, | 4.11.19

based on the evidence it already had, it was not. | Ex. 22, 002673

_____

64.) Unum never indicated that it wanted to perform any | 65.)   Id.

additional evaluations, such as an IME or an FCE, to |

further evaluate Plaintiff's claim that her exertional |

capability was "less than sedentary." |

_____

65.) Unum's vocational consultant, Ms. Cloutier, | 66.) Cloutier's

indicated that "sedentary" work involves "sitting | Voc. Report

most of the time," that Plaintiff's occupation in the | 9.21.18

national economy required "constant sitting," | Ex. 6, 002257 -

and that "constantly" meant "5.5+ hours a day in | 002259

an 8-hour workday." |

_____

66.) Dr. Han (Plaintiff's treating primary care physician) | 67.) Han's Rec.

documented that Plaintiff alleged she was able to sit for | Ex. 8,

less than 4 hours and stand/walk for less than 2 hours in | 003792-003793

an 8-hour workday.                                      |

_____

67.) Dr. Malhis (Plaintiff's treating orthopedist)     |     68.) Malhis' Rec.

documented that Plaintiff "cannot sit or stand         |     Ex. 12

for long periods of time due to pain ... and has  ...  |     003885

difficulty when driving due to pain."                  |

_____

68.) Dr. Hafezi (Plaintiff's treating pain specialist) |     69.) Hafezi's Rec.

documented that sitting, standing, walking aggravated  |     Ex. 13

her back and leg pain.                                 |     003855

_____

69.) Dr. Aguilera (Plaintiff's treating gynecologist)  |     70.) Aguilera's Rec.

documented that Plaintiff "cannot sit nor stand over   |     Ex. 9,  003801

4 hours."                                              |

_____

70.) Physical Therapy documented that Plaintiff is     |     71.)  PT Rec.

"... unable to sit/stand for prolonged periods ..."    |     Ex. 14

                                                       |     003909

_____

71.) Dr. Steiger (Plaintiff's orthopedist) documented  |     72.) Steiger's Rec.

| | |
|---|---|
| that Plaintiff was limited to sitting not more than | Ex. 7 |
| 1-2 hours and walking/standing not more than | 003748 |
| 2-3 hours in an 8-hour workday. | |

_____

| | |
|---|---|
| 72.) No treating or examining doctor or healthcare | 73.)  See: |
| provider ever indicated that Plaintiff could sit for more | ¶¶ 68 to 74, |
| than 4 hours, let alone 5.5+ hours, in an 8-hour workday. | incl., supra |

_____

73.) Plaintiff testified through her Declaration that  | 74.)  Decl. Rios, Ex.1

she required lying down 1-2 hours during the day  | ¶20, dated 1.31.19,

to rest her back because of pain.  | 003731; corroborated

 by Dr. Steiger -

| "standing, walking,

|and sitting aggravate

|her |pain." [Ex. 7;

|003734, 003737,

|003744]; Dr. Malhis -

|"improves with rest"

|[Ex. 12, 003894]; Dr.

|Hafezi - "relieving

|factors - rest, pain medications" [Ex. 13, 03855, 003859]; Physician-Assistant Estrada -"severe left knee pain ... hard time walking ... mainly limping x4 days ... limit weight-bearing." [Ex. 18, 003866-3867]; and Physical Therapy - "easing factors -lying down, resting" [Ex. 14, 003910].

| | |
|---|---|
| 74.) Plaintiff is not inert or bedridden and is able to perform some household chores and activities of daily living, but at her own pace and with pain. | 75.) Decl. Rios Ex. 1, ¶22 003731 |
| 75.) Dr. Steiger indicated that Plaintiff was unable to | 76.) Steiger's Rec. |

| perform any "full time competitive work." | | Ex. 7 |
| | | 003741-003742 |
| | | |
| 76.) Dr. Steiger indicated that Plaintiff's "disability is expected to continue indefinitely." | | 77.) Id. |
| | | |
| 77.) On May 10, 2019, having exhausted all of her administrative remedies, Plaintiff filed suit. | | 78.) DKT No. 1 |

## CONCLUSIONS OF LAW

1.) The Court has jurisdiction over this action pursuant to the  Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves a claim by Plaintiff for employee benefits under employee benefit plans regulated and governed under ERISA.

2.) *De novo* review on ERISA benefit claims is typically conducted as a bench trial under Rule 52. (*Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 n. 2 (N.D. Cal. 2011)).

3.) *De novo* is a non-deferential standard of review, meaning the court evaluates the claim strictly on the merits, accords the plan no factual or legal

deference and does not defer to the insurer's previous finding.  (*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999)).

4.)   Under a *de novo* review, the standard of proof is a preponderance of the evidence standard, which requires credible evidence that shows a greater than fifty percent chance that Plaintiff's claims are true. (9th Cir Jury Instr. § 1.3 - "... you must be persuaded by the evidence that the claim ... is more probably true than not true," ... regardless of which party presented [the evidence.]").

5.)   Under a *de novo* review, the court simply proceeds to evaluate whether the insurer correctly or incorrectly denied benefits. (*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)).

6.)   Under a *de novo* standard of review, which requires a preponderance of the evidence, claim denial decisions are subjected to more rigorous scrutiny than under an abuse of discretion standard, which requires "substantial evidence." (*Adamson v. Unum Life Ins. Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006)).

7.)   *De novo* review on ERISA benefit claims is typically conducted as a bench trial under Rule 52. (*Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 n. 2 (N.D. Cal. 2011)).

8.)   While Unum correctly avers that "Rios' assertion that her self-reported symptoms rise to the level of disability should not be taken at face value," Dkt. 52, ¶ 9, when pain complaints are associated with a medically demonstrable impairment, credible pain testimony should contribute to a determination of disability. (*Cotton v. Bowen*, 799 F.2d 1403, 1407-1408 (9th Cir. 1986)). An adjudicator who rejects a claimant's allegations of the severity of pain may do so only when properly supported by the record and may not "arbitrarily discredit a claimant's testimony regarding pain." (*Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)).

9.)   In adjudicating disability claims under ERISA, courts have found that Social Security Administration ("SSA") opinions may be helpful guidance. (*Halpin v. W.W. Grainger, Inc*., 962 F.2d 685, 695 n.11 (7th Cir. 1992)). If a Social Security disability claimant is determined to be "less than sedentary," this means the claimant is disabled from "any gainful occupation" and entitled to benefits. 42 U.S.C. 423(d)(1)(A); C.F.R. § 404.1520. The Ninth Circuit has held that it is "erroneous" for a district court to reject the SSA's definition of "sedentary" simply because it was drawn from a "Social Security context" and to hold that "the federal criteria for Social Security claims are not transferable to ERISA cases." (*Armani v. Northwestern Mutual Life Insurance Co*., 840 F.3d 1159, 1163 (9th Cir. 2016)). While the

Court does not base its determination in this case on Rios' favorable SSA decision, it does consider the award to be relevant, in keeping with Ninth Circuit precedent. (*Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009)).

10.) An employee "who cannot sit for more than four hours in an 8-hour work-day cannot perform 'sedentary work' that requires sitting 'most of the time.'" (*Armani v. Northwestern Mutual Life Insurance Co*., 840 F.3d 1159, 1164 (9th Cir. 2016)). That Rios is able to engage in some limited daily activity does not necessarily enable her to work full-time in a competitive work environment. (*See Hawkins v. First Union Corp*., 326 F.3d 914 (7th Cir. 2003) ("Hawkins' unfortunate choice in life is between succumbing to his pain ... and becoming inert ... (or) pushing himself to engage in a certain amount of painful ... activity ... (this) does not prove that he is not disabled.")).

11.) Paper reviews are not inherently objectionable. (*Siegel v. Conn. Gen. Life Ins. Co*., 702 F.3d 1044 (8th Cir. 2012)). However, an insurer's decision not to perform an independent medical examination, when the plan or policy allowed it, "raise[s] questions about the thoroughness and accuracy" of its benefits determination. (*Montour v. Hartford Life & Accident Ins. Co*., 588 F.3d 623, 630, 634 (9th Cir. 2009)). When disability is based on a diagnosis

of chronic pain and its functional impairments, as here, the disability opinions from non-examining physicians paid by the insurance company are entitled to "skepticism" when "physicians who actually examined [Plaintiff are] entirely one sided in favor of [Plaintiff's] claim." (*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d  666, 676-679 (9th Cir. 2011).

12.)  The court gives less weight to a non-examining doctor's opinion favoring a denial of benefits for subjective complaints such as pain, without a physical examination. (*Schramm v. CNA Fin. Corp. Insured Group Benefits Program*, 718 F. Supp. 2d 1151, 1164 (N.D. Cal. 2010) ("[T]he court gives little weight to the opinions of (doctors) ... who are not examining plaintiff in person.")). The court also gives little weight to a non-examining doctor's opinion, based on a paper review of the file, about the credibility of a plaintiff in reporting her subjective complaints, such as pain, without a physical examination. (*Smith v. Continental Cas. Co.*, 450 F.3d 255, 263-264 (6th Cir. 2006) (credibility findings concerning subjective complaints without a physical exam were improper)).

13.)  Rios' decision not to undergo surgery that could potentially improve her condition does not render her ineligible to receive benefits. A plaintiff is neither non-compliant nor is she required to undergo invasive treatments, such as surgery, when the policy does not require her to pursue the most

aggressive treatment as a condition of eligibility to receive benefits. (*Shaw v. AT&T Umbrella Plan 1*, 795 F.3d 538 (9th Cir. 2015)).

14.) Courts often remand unexhausted "any occupation" determinations to the insurer. (*Nagy v. Grp. LTD Plan for Employees of Oracle Am., Inc*., 183 F. Supp. 1015, 1032 (N.D. Cal. 2016), aff'd, 739 F. App'x (9th Cir. 2018)). However, courts have discretion to excuse non-exhaustion and award "any occupational" benefits even though the insurer did not decide eligibility for benefits under the "any occupation" definition of disability in the first instance. (*Reetz v. Hartford Life & Acc. Ins. Co*., 294 F. Supp. 3d 1068, 1084 (W.D. Wash. 2018)).

15.) Administrative remand is discretionary with the court, and when an insurer's termination of benefits decision is simply contrary to the facts, the appropriate remedy is reinstatement of benefits rather than administrative remand if remand would be an exercise in futility. (*Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) ("A plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts."); (*Paese v. Hartford Life and Acc. Ins. Co.*, 449 F.3d 435 (2nd Cir. 2006)).

16.) Failure to administratively exhaust an "any occupation" claim is an

affirmative defense and does not deprive the court of its jurisdiction. The court retains its jurisdiction and discretion to excuse non-exhaustion when plaintiff makes a "clear and positive" showing that exhaustion would be futile. *Id*. at 443. Administrative remand to determine an entitlement to benefits under the "any occupation" standard is inappropriate where plaintiff has argued for benefits under both the "own occupation" and "any occupation" standards and the evidence supports plaintiff's inability to perform either her "own  occupation" or "any occupation" under the policy. Therefore, the Court declines to remand this case to Unum to conduct an "any occupation" evaluation.

17.) Under ERISA, an award of attorney's fees and interest is discretionary with the court. (29 U.S.C. § 1132(g)). The Ninth Circuit typically follows a presumption in favor of a fee award to a successful ERISA plaintiff "unless special circumstances would render such an award unjust." (*McElwaine v. US West, Inc*., 176 F.3d 1167, 1172 (9th Cir. 1999)). A successful plaintiff may request permission to make an Application for an Award of Attorney's Fees under Local Rule 54-10, including both pre- and post-judgment interest under 28 U.S.C. § 1961. (*Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007)).

## **CONCLUSION**

After considering the parties' arguments, for the reasons explained above and based on the totality of the evidence in the Administrative Record, the Court **HOLDS** that Rios has proven by a preponderance of the evidence that she is entitled to policy benefits under both the "own occupation" and "any occupation" standards. Judgment shall be entered in Plaintiff's favor.


DATED:  December 10, 2020

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE